IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT

OF

SOUTH CAROLINA


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

In the Matter of:

**Boyd Hinton** (Plaintiff),
*Pro Se*

**Civil Case No.:** 2:25-cv-13663-DCN-MHC

Against

No Request for Trial by Jury

**Brian Bryant** (Defendant),
*International President, aka IP.*
*International Association of Machinists*
*and Aerospace Workers, aka IAM*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


### COMPLAINT: TRUSTEESHIP


**FEDERAL LOCAL 1998 OF THE U.S. DEPARTMENT OF STATE-PASSPORT SERVICES, BUREAU OF CONSULAR AFFAIRS**


**Plaintiff's Initial Request to The Courts:**

- **Due Process Rights to Discovery.**

- **Injunction/Restraining Order regarding the Suspension or Trusteeship by the IAM towards Federal Local 1998.**

- **Financial support directly from IAM.**

1

## TABLE OF CONTENTS

A.  **Plaintiff's Question To the Courts Regarding the Issues**. page number _3.

B.  **Jurisdiction** - page number _ 3.

C.  **Introductions** - page number _5.

D.  **Background of the Occurrences** - page number _9.

E.  **Claims** – page number _15.

    1 Claim – page number _15

    2 Claim – page number _16

    3 Claim – page number _17

    4 Claim – page number _22

    5 Claim – page number _24

    6 Claim – page number _26

    7 Claim – page number _26

F.  **Remedies** – page number _33.

G.  **Signature page** – page number _35.

H.  **Index of Enclosures: Exhibits** – page number _36.

    Exhibit A (with redactions)
    Exhibit B (with redactions)
    Exhibit C (with redactions)
    Exhibit D (with redactions on D 1, unredacted on D 2)
    Exhibit E (with redactions)

### A. PLAINTIFF'S QUESTION TO THE COURTS REGARDING THE ISSUES

1. Was it _unlawful_ that the IAM refused to have a union member review requested information since Federal Local 1998 is subject to procedures with Suspension or Trusteeship, and _if so_, what would be the remedy (ies)?

2. Were the process/procedures/standards/laws/rules/regulations or codes with the Suspension/Trusteeship _unlawful_, _and if so_, what would be the remedy (ies)?

### B. JURISDICTION

**Relevant laws, regulations, codes, policies, agreements, rights, rules, and procedures.**

3. **Civil Service Reform Act of 1978** (aka "CSRA", aka Title 5 of U.S. Code Government Organizations and Employees Part III-Employees Subpart F-Labor Management and Employee Relations Chapter 71 Labor-Management Relations: Subchapter I, II, III, IV; aka Chapter 71 of Title 5 of the U.S. Code, _as amended_, aka Federal Service Labor-Management Relations Statute, 5 U.S.C Chapter 71; aka the "Statute").

   - **§ 7120. Standards of conduct for labor organizations**[1]; sub regulation (a) (1); (b) (1) (2); (c).

   - **§ 7135. Continuation of existing laws, recognitions, agreements, and procedures:**

---

[1] Bylaws of District Lodge, approved 12-10-23; effective 12-1-24, Approved By IP "subscribes to the 'Standards of Conduct for Labor Organizations' reflected in 5 U.S.C.", see Paragraph No. 15 as following below **Introductions**.

- sub regulation §7135 (b), ", or any other Executive Order…";

  ➢ Executive Order 14251 titled "Exclusions from Federal Labor-Management Relations Programs".

4. **Any other** case laws[2], regulations or codes, or other legal authorities regarding Trusteeship standards, or procedures, that permits the rights of an individual to seek direct involvement of the Courts without a complaint filing with the Department of Labor.

5. **Any other** federal laws, federal regulations or codes or rules[3], or other legal authorities regarding the Rights of disclosure of Information and the review of requested information.

6. **IAM Constitution, dated January 1, 2025**: **Article VI International President** Purposes for Which a Suspension or Trusteeship May Be Established. **Article VI International President** Suspension of Locals, Districts, Councils and Conferences, Their Officers and Representatives. "**Sec.9(a)** Whenever the I.P. determines that any of the circumstances described in SEC 8 exist, he/she may appoint a temporary Trustee to take charge and control over the affairs of such subordinate body. *All officers* and *representatives shall be suspended without pay* pending their appointment by the temporary Trustee to serve a Deputy Assistants" (*stress emphasis*, and *elevated stress emphasis*).

---

[2] Blue v. United Brotherhood of Carpenters and Joiners, 47 LRRM 2590 (D. Minn. 1964). //www.dol.gov/agencies/olms/compliance-assistance/interpretive-manual/300-trusteeship : 352.100 COURT DECISIONS ON MEMBER'S RIGHT TO SUE Trusteeship | U.S. Department of Labor

[3] Federal Rules of Civil Procedure: Rule 26 Duty to Disclose; General Provisions Governing Discovery.

## C. INTRODUCTIONS.

### Introduction of the Plaintiff.

7.  The Plaintiff is currently an IAM member in good standing. The Plaintiff had duties as the President of a federal employee's Union known as Local 1998, or Federal Local 1998, (aka FL 1998). He represented the bargaining unit employees of within the U.S. Department of State Passport Services Bureau of Consular Affairs, prior Executive Order 14251 (aka Exclusions). The Plaintiff has been volunteering with providing representational services for U.S. Dept of State employees since 2006. The Plaintiff became the president of FL 1998 through succession because of the resignation of the prior FL 1998 president last year. The address of FL 1998 is listed in North Charleston, South Carolina. The Plaintiff's employer is not the IAM.

### Introduction of the Defendant.

8.  The Defendant is the International President (aka IP) of the IAM. He is paid in accordance with the IAM Constitution. According to its constitution the IP salary is "$180,000 effective January 1, 2001, and effective January 1, 2011, and each January 1st thereafter, the above-named officers shall have their salaries increased in the CPI-W as published by the USDOL and Canadian Consumer Proce Index as published by Statistics Canada.[4]" The IAM Constitution is dated January 1, 2025, and is undesigned by the IP. The IP also undersigns documents known as IAM "Office circular (aka OC)".

---

[4] IAM Constitution, dated January 1, 2025. Article IX.

9. The IAM IP employment is addressed at 9000 Machinists Place in Upper Marlboro, MD. This address is located on IAM Memos provided as **Exhibits B and C**. This address is posted on the IAM Website, in addition to a phone number and an e-mail address[5].

## Introduction of the IAM as an Organization.

10. The IAM is the parent union of the National Federation of Federal Employees, Federal District 1 (aka NFFE, or NFFE FD-1).

11. The IAM is affiliated with the American Federation of Labor-Congress of Industrial Nations, aka AFL-CIO.

12. The revenue of the IAM is described within its constitution[6], and "shall be derived from the sale of supplies, collection of dues, per capita tax, initiation fees, reinstatement fees, the income from the publication of THE JOURNAL, interest, investments[7], and such special assessments as may be levied from time to time."

13. According to U.S. District Judge Donato, "[NFFE-IAM] include national unions which received more than $750,000 in allotted dues in a single pay period, even after the Order was issued and went into partial effect[8]".

---

[5] //www.goiam.org/contact/
[6] Article XII.
[7] According to National Finance Services LLC that mailed a report to the International Association of Machinists and Aerospace Workers: JP Morgan Semi-Annual Shareholder Report August 31, 2025, Key Fund Statistics indicate the fund net assets are over 4.8 billion dollars.
[8] USDC Northern District of California, AFGE et al. v. Donald Trump: Order Re Preliminary Injunction, Case No. 25-cv-03070, dated June 24, 2025; page 26, Bond D.

**Introduction of a District Lodge/Local: the NFFE FD-1.**

14. NFFE is also a District Lodge (aka D.L., DL, or DFD1L) of the IAM - a subordinate body of the IAM.

15. NFFE has bylaws and it cites federal laws such as 5 U.S.C. 71. These current Bylaws were approved by the IAM IP since 2024. The NFFE has jurisdiction of all its Federal Locals (FL). It is headquarters in Washington DC.

16. The bylaws of NFFE FD 1 contain Articles for its <u>Revenue</u> and <u>Financial Practices</u>. The IAM audit report of DFD1L for the 2nd half of year 2023 shows the Grand Total All Assets as $1,293,170.18.

**Introduction of the Federal Local 1998 (aka FL 1998, Local 1998, 1998).**

17. The FL 1998 is a nationwide local covering all U.S. passport offices across the U.S., and a passport office in the territory of Puerto Rico. It is a subordinate body of the IAM and part of the NFFE FD-1. 1998's headquarters location varies according to where the local president is at in the United States of America. The prior location of FL 1998 was in Philadelphia, Pennsylvania. The location of FL 1998 is North Charleston, South Carolina.

18. 1998 has its own Bylaws. The 1998 bylaw declares that "This Lodge represents the bargaining unit employees of Passport Services, a division of the Department of State's Bureau of Consular Affairs." Its bylaws have provisions that reference and are subject to the collective bargaining agreement, prior to "Exclusions" of

Executive Order 14251. These FL 1998 lists union positions within the collective bargaining agreement between FL1998 and the U.S. Dept of State. U.S. Department of State Passport services employees that are representatives of FL 1998 are employees of the U.S. Dept of State, with certain exceptions. These current bylaws were approved by the IAM International President since 2005.

19. *Prior to Executive Order 14251*, 1998 was recognized as a labor organization under 5 U.S.C. § 7103 (a) (4); and therefore, Passport services employees *were* eligible to be included in a bargaining unit in accordance with 5 U.S.C 7103. (*stress emphasis*)

20. As date of this filing, a court ruling from 9th Circuit of Appeals declared, "Moreover, any terminated agreements can be reinstated if Plaintiffs *ultimately prevail*[9]". (*Stress emphasis*). This applied to FL1998's collective bargaining agreement and its employees that *were represented* within Passport Services. An En Banc hearing is currently pending on this lawsuit.

21. An audit report in the year 2022 by the IAM, shows 1998's grand total all assets are $425,367.44.

---

[9] US District Court of Appeals for the Ninth Circuit, No 25-4014 D.C. No. 3:25-cv-03070-JD Northern District of California San Franciso ORDER, dated Aug 1, 2025 (pg. 15: "*Moreover, any terminated agreements can be reinstated if Plaintiffs ultimately prevail*").

## D. BACKGROUND OF OCCURENCES

### I.  The President Trump Executive Order 14215 and "Exclusions" – U.S. Dept of State.

22. On March 31, 2025, in the evening of, Plaintiff received an e-mail on his government account (state.gov) notifying him that FL 1998 was excluded from performance of all representational duties by Executive Order. Plaintiff returned to his full-time duties doing Agency work. (**Exhibit[10] A**).

### II.  The Notice of virtual meeting with the IAM and service of Memo for "Supervision[11]".

23. After the Sunrise on July 28, 2025, the IAM sent an email to Plaintiff titled NFFE Local 1998 Officer Meeting. It was a virtual meeting for 7pm CST that evening. The email declared "Please make mandatory arrangements to attend this mandatory meeting." This email from the IAM did not include an agenda. The Plaintiff is in the EST time zone.

24.  Plaintiff notified the IAM in advance that he could not attend and requested for it to be rescheduled. The request for rescheduling was denied by the IAM.

---

[10] US DC Northern District of California, Case No: 4:25-cv-03070 filed 04/03/2025, Complaint for Declaratory and Injunctive Relief. Paragraph No. 207 on page 35.
[11] IAM Article VI: Sec 7 describes "The I.P. shall have the **general supervision** of all L.L.s, D.L.s, and councils and conferences and the officers thereof", and then there is a "**direct supervision, direction and control** any L.L….for any reasons set forth in SEC 8 of this Art., pending approval of the E.C."

25. On July 28, 2025, after the evening meeting was conducted by the IAM, I received another email from the IAM with an attached of a memo titled "Supervision". The Memo indicated that the IP had made the decision for "Supervision" on July 22, 2025, before the meeting was requested and notice was serviced to the Plaintiff with a Memo with the Subj: "Supervision". (see **Exhibit B**).

26. Plaintiff followed up with the IAM regarding the prior evening meeting with an email on the day after. Plaintiff requested information from the IAM to review the IAMs transcripts and the recording of the meeting that happened yesterday.

27. The transcripts and record of the meeting was not provided to Plaintiff; instead, the IAM replied with an email back to Plaintiff in writing declaring that "*[A]ny information obtained in the supervision will only be shared when it is used as evidence in the court of law.*" (*stress emphasis* and *elevated stress emphasis*).

28. Plaintiff requested the IAM to direct him to an IAM dept for FOIA, but his request made to the IAM was never provided for him.

29. During the "[Direct] Supervision" Plaintiff was also conditioned with the following: "Failure to comply with any of the following as listed above or the Supervisor directives will result in recommended disciplinary action,...[12]"

30. Plaintiff emailed the IAM with an attached a letter to the IP objecting to "[Direct] Supervision". The IP did not reply to Plaintiff's letter.

---

[12] After Memo in July 22, 2025 claiming "Supervision, it is now revealed that this is a "Direct Supervision, direction and control any L.L. ...(IAM Constitution Article VI lines 11-17)" when a union "Performance Improvement Plan", aka "PIP" is then emailed by the IAM Supervisor to the Plaintiff.

31. During the time on "[Direct] Supervision", several internal formal complaints were filed to the IAM. Some of those complaints were investigated by the IAM, and some of those complaints were not. Some of the issues involved with those complaints to the IAM were allegations such as: D.L. was ordered to conduct meetings to the membership when the Plaintiff was in "[Direct] Supervision"; holding meetings improperly called and conducted without proper chair; issues with rules of order and parliament procedures; and defamation of a member's character without protections of procedure; among other issues. Some of these complaints are pending an internal investigation by the IAM. Also, during the "[Direct] Supervision", Plaintiff had emailed a written letter to the IP pertaining to the IAM's protest/complaint procedures. This Letter took issue with how the IP's treatment of the Plaintiff was during the protest/complaint process - in comparison to other members. The IP did not reply to Plaintiff's letter.

32. During the time on "[Direct] Supervision", Plaintiff emailed the IAM and included two letters to the IP requesting to cancel this "[Direct] Supervision". The IP did not reply to those letters.

33. From July 22, 2025, to November 19, 2025, by Memo, the Plaintiff was on "[Direct] Supervision" by the IP for 120 days.

34. The IP has not provided any evidence that an LM-15 Report was filed in accordance with the law to the U.S. Department of Labor as the parent organization when the IP

exercised the authority to place Plaintiff under "Direct Supervision, direction, control[13]".

## III. __The Notice of Trusteeship to Plaintiff.__

35. On November 12, 2025, Plaintiff received an email from the IAM titled "Mandatory Meeting 11-19-2025". The meeting time was at 9am EST. The location was at a hotel in North Charleston South Carolina, and it was a request for a meeting in person. The IAM also provided a TEAMS invite. This e-mail from the IAM did not have an Agenda attached, nor did the message contain specific reasons why it was mandatory.

36. Plaintiff emailed the IAM back and requested more information from the IAM prior to the meeting.

37. The information Plaintiff requested was never provided to Plaintiff prior to the meeting.

38. The day before the meeting, Plaintiff emailed the IAM to inform them that he would not be attending.

39. On November 19, 2025, Plaintiff went to work his shift at the U.S. Department of State's Passport Office that morning of before and when the IAM meeting happened.

40. On November 19, 2025, an e-mail was sent to Plaintiff from the IAM, and this email included an attached Memo. (**Exhibit C**).

---

[13] IAM Article VI Supervision of Local and District Lodge, Councils and Conferences. SEC 7, lines 11-17.

41. This Memo was "Subj: Trusteeship" and it had several changes within it in comparison to memo subject <u>Supervision</u>. (**Exhibit B**).

42. The IP appointed a "the temporary trustee". The "temporary trustee" is indicated in paragraph 3 in **Exhibit C**.

43. The IP also in this same Memo did a cc to a "Deputy" in which the name has been redacted.

44. The "Deputy" named by the IP in the cc was the same that was appointed by the IP as the "temporary trustee" in **Exhibit C**.

45. Plaintiff sent the IAM an email requesting information after receiving the letter "Trusteeship", and Plaintiff's request for information was never provided nor replied to the Plaintiff.

## IV.     <u>The Notice of Hearing to the FL 1998 Members.</u>

46. On November 22, 2025, Plaintiff received a mailed envelope with no return address. (**Exhibit D: 1**). The envelope contained a letter was dated November 19, 2025[14], and contained a photocopy of a notice for FL 1998 Members of a Trusteeship, and allegations with occurrences, and notified of a scheduled IAM Hearing in North Charleston SC at a Hotel. (**Exhibit D: 2**).

---

[14] On November 18, 2025, I had emailed the DL a request for information, and the DL never responded back to my request for information.

47. This letter named the same IAM employee that was identified in the Plaintiff's redacted Memos (**Exhibits B and C**). The IAM employee is titled as "FL 1998 Trusteeship Deputy".

48. The FL 1998 Trusteeship Deputy that signed on this Letter was also appointed as the "Supervisor" of FL 1998, prior to this appointment. This Memo was provided for as **Exhibit B**.

**V.    The Letter for financial assistance from the IAM for legal assistance.**

49. On November 21, 2025, Plaintiff emailed a Letter to the IP and requested financial support from the IAM for financial assistance from the Courts to file a Civil Action regarding the Trusteeship. (**Exhibit E**). After the Letter was filed with the IAM, the IAM replied and an email exchange began. The IAM did not decide to follow-up after the email exchanges on the filing of Plaintiff's Letter.

50. With no action from the IP, the Plaintiff's request can be presumed as denied.

### E. CLAIMS.

1. <u>**CLAIM: The right to review requested information is fair, and also equal, right.**</u>


### Argument of violation in this Claim 1

51. As described within this complaint, The IAM declared to Plaintiff that *"[A]ny information obtained in the supervision will only be shared when it is used as evidence <u>in the court of law</u>.*" (*stress emphasis* and <u>*elevated stress emphasis*</u>). The IAM has scheduled a hearing for charges on December 9, 2025. This would be a review of any evidence that may be used by the IAM from the beginning of the Supervision, to include any other evidence leading to the Supervision, and any evidence cited by the IAM afterwards.

52. Plaintiff argues that the evidence shows in this complaint that IAM agrees that the Courts are the proper venue for providing the review of the Plaintiff's request for information when Plaintiff had requested to review it and the IAM directed it to "the court of law".

53. Plaintiff argues that the Courts are the proper venue for the dispute on suspension or trusteeship since the release of evidence is in the "Court of law", and not in an IAM hearing, or IAM court.

54. The evidence shows within this filing of more than one occurrence after the implementation of Direct Supervision that the IAM has no intentions with providing

Plaintiff additional disclosure to review information.  Any denial of review from information requesting from the IAM does not provide fair due process to Plaintiff.

### The Legal Authorities Violated by the IAM in this Claim 1.

55. The Plaintiff raises allegations that the evidence supports that the IAM violated federal rule for **Duties to Disclose** and also the "Statute" such as **§ 7120 Standards of conduct of labor organizations** – i.e. (a)(1) "to receive fair and equal treatment..., and receive a fair process in disciplinary hearings".

### 2. CLAIM: Rights to additional Discovery during filing with Civil Procedures.

### Argument of Violation in this Claim 2.

56. The IAM previously agreed to Plaintiff that information ""*[A]ny information obtained in the supervision will only be shared when it is used as evidence in the court of law.*" (*stress emphasis* and *elevated stress emphasis*). The Plaintiff and the Defendant are beginning the procedures to be at the "*court of law*" because of this complaint filing to the Courts since an action on a suspension or trusteeship with Federal Local 1998 under the CSRA, as amended, has been serviced to the Plaintiff and to FL 1998 members. However, the evidence also shows that prior to this filing that more than one occurrence listed within this filing show that the IAM does not provide the Plaintiff rights to review requested informing during the process of

trusteeship such as after "[Direct] Supervision, and then after suspension or

trusteeship has been imposed upon the Plaintiff.

## The Legal Authorities Violated by the IAM in this Claim 2.

57. Plaintiff's allegations with evidence and violations are the same as described in the

above in **1. Claim** for this <u>**Claim Number 2**</u>.

## 3.  <u>CLAIM: The IAM's process to implement the FL 1998 Trusteeship is unlawful.</u>

**Argument of violation in this Claim 3:**

**The "Direct Supervision" was not reported in accordance with the law and within the**

**30 days of the imposition of the "subject to other sanctions" by the IP to the U.S. Dept**

**of Labor.**

58. Plaintiff had been subject to "Direct Supervision" for over 90 days since the Memo

date of July 22, 2025, and he was also conditioned in a "PIP" during this time that

"*<u>Failure to comply with</u> any of the following as listed above <u>or the Supervisor directives</u>*

*will result in recommended disciplinary action,…*" (*stress emphasis* and *<u>elevated stress</u>*

*<u>emphasis</u>*).

59. Plaintiff asserts that the "Direct Supervision" was the existence of a Trusteeship also that

began on July 22, 2025. This evidence shows the Plaintiff's "suspension [of his]

autonomy was partial, or [even] complete[15]" because the Plaintiff was conditioned to "*comply….with the Supervisor directive will result…*".

60. The loss of decision making is a loss of autonomy since discipline was threated if the Plaintiff "fail[ed] to comply with" the "Supervisor directives". The Plaintiff also notes more evidence that the "Direct Supervision" was a loss of autonomy[16] during his "[Direct] Supervision"; for example, more than one occurrence happened when the DL had, and/or was ordered by the IAM, to perform the Plaintiffs conditions even though the DL was not subject to the "[Direct] Supervision". This occurrence led to internal complaint filing to the IP. Those complaints are under investigation by the Special Trial Committee (STC) that is appointed by the IP. Also, on another account, a member from the DL that was not subject to the [Direct] Supervision informed the membership in an email, that "any major news on the local can be expected to come from Mr. McCarty". This message from the DL was right after the Plaintiff sent out an email to update the membership on two topics. This is evidence that the Plaintiff was not to comminute news to the membership – another loss of autonomy during "[Direct] Supervision".

61. Plaintiff argues that this "[Direct] Supervision" and the conditions placed upon the Plaintiff was not only a suspension or trusteeship under the law, but it also qualifies under the 7120(b)(1) as "…, *or is subject to other sanction*, by a parent labor organization, or federation of organizations with which it had been affiliated". The placement of a "[Direct] Supervision" on Plaintiff was a requirement to be reported by the IP within 30 days in accordance with the law to the Department of Labor on an LM-15 form.

---

[15] U.S. Department of Labor. Office of Labor Management Standards: Trusteeships-Determining Existence of Trusteeships section 305.100 Suspension of Autonomy May Be Complete or Partial. www.dol.gov
[16] Id.

62. Plaintiff argues these are circumstances that the IP is solely responsible for on this LM-15 reporting by law - before the deadline by law beginning back from July 22, 2025 (as noted with the date in **Exhibit B)**. The IP exercised the authority under his <u>Duties</u> and <u>Supervision of Local and Districts, Councils and Conferences</u> in <u>Article VI</u> that "The I.P. shall have the authority to place under his/her "direct supervision , *direction and control* any Local…".This would include the responsibility of the IP to file timely paperwork to the DOL on an LM-15 for notifying an "subject to other sanction" such as the "[Direct] Supervision" imposed on the Plaintiff.

63. The Plaintiff reviewed the U.S. Dept of Labor Trusteeship Reports between the dates of July 22, 2025, into November 30, 2025. As of the date of this filing, there is no evidence that the IP had filed an LM-15 Trusteeship Initial Report reporting the "[Direct] Supervision" of FL 1998 within 30 days after the date of the imposition of being "subject to other sanction[17]. Instead, a LM-15 Trusteeship Initial Report was made on November 19, 2025, after notice was serviced of a suspension or trusteeship the Plaintiff. This November 19, 2025, report provided on the website[18] of the U.S. Dept of Labor did not provide a link to view the LM-15 made on November 19, 2025 to identify someone within the IAM that filed it.

### The Legal Authorities Violated by the IAM in this Claim 3.

64. Evidence supports Plaintiff's claim that the IP violated federal "Statute" such as **§ 7120 Standards of conduct of labor organizations** – i.e. (b)(1) "the organization has been suspended…*or is subject to other sanction*" since the IP did not report to

---

[17] //olmsapps.dol.gov/olpdr/?_ga=2.217999830.1500577326.1673271090-176283821.1673011123#Union%20Reports/Trusteeship%20Reports/
[18] www.dol.gov/agencies/olms/public-disclosure-room

the U.S. Dept of Labor that Plaintiff was " subject to other sanction" by filing a LM-15

within 30 days after the date of the [Direct] Supervision in accordance with the law.

**More Legal Authorities violated by the IAM in this Claim 3.**

65. The Plaintiff raises that the IP not filing LM-15 reports when the IP took "[Direct]

Supervision" is subject to more than a Civil action, as the LM-15 report form that

Plaintiff has reviewed on-line[19]. This form declares that "This report is mandatory

under P.L. 86-257 as amended. *Failure to comply may result in criminal prosecution,*

*fines*, or *civil penalties* as provided by 29 U.S.C. 461."

66. The Plaintiff has not raised "criminal" matters, or "fines", against the IP, currently.

**Argument of Violation in this Claim 3:**

**The IP did not administer Suspension without pay to "All…" to make a lawful**

**suspension or trusteeship.**

67. Plaintiff had not been placed in Suspension without pay. The IAM Constitution in

Article VI International President[20] demands that this is a requirement for the

process of Trusteeship. The Law provides according to the "governing rules of [this]

organization" and "[compliance] with trusteeship standard[21]".

---

[19] www.dol.gov/sites/dolgov/files/OLMS/regs/compliance/GPEA_Forms/forms/Form_lm_15_watermark.pdf
[20] Reference in Complaint: Paragraph Number 6 in B. Jurisdiction.
[21] § 7120. Standards of Conduct for labor organizations. (a)(1); (c).

68. These governing rules in <u>Suspension of Locals, Districts, Councils and Conferences, Their Officers and Representatives</u> SEC.9(a) have remined in place since as far back as the IAM Constitution dated January 1, 2017. A substantive change was made to this section in SEC.9(a) when compared to the IAM Constitution dated January 1, 2023. The 2025 IAM Constitution added a rule "or Article VII, SEC 5 (lines 23,25).[22]"

69. Plaintiff is not aware if "<u>*All*</u>... *representatives*[23]" have been placed on suspension without pay to properly suspend FL 1998 in order to complete the process of FL 1998's Suspension or Trusteeship (*id*). The IAM has not provided any evidence that "<u>*All*</u>...*representatives*" were placed on suspension without pay per the IAM Constitution Article VI.


<u>Suspension without pay: a Retiree FL 1998 Officer under procedures for Trusteeship.</u>

70. Plaintiff reveals that a redacted FL 1998 officer's name and title that was under Supervision[24] is an officer with a retiree membership status of the IAM. Plaintiff is not aware that a suspension without pay in accordance with Article VI was implemented by the IAM towards this officer to make the suspension of this local proper into suspension or Trusteeship. It is unknown to the Plaintiff how the IAM

---

[22] Plaintiff is not aware if the IAM filed proper forms with the U.S. DOL when these changes were made to the Constitution.

[23] A 1998 membership meeting on September 4, 2025, had at least six "Senior Stewards" (aka *representatives* affiliated of IAM) attended this meeting. The minutes of this meeting were made and distributed via email to the membership afterwards – in which the six members were named and identified as to their union *representative* titles and which passport office they had come from. (The email was sent Bcc from a member affiliated within the DL – which it is presumed that they have had to draft/made minutes)

[24] An **unredacted Exhibit B** may be available and as/if appropriate, to shown title, or name, of the officer cited.

would stop the payment of this FL 1998 officer's retirement check for the purpose of placing FL1998 into Trusteeship.

71. It is unknown to Plaintiff the arrangements, and/or procedures, that the IP uses to implement a suspension without pay to make Article VI whole and fully enforceable when it is required to place "*All* officers and *representatives shall be suspended without pay*" to justify a legal trusteeship in accordance with the law. (*Stress emphasis* and *elevated stress emphasis*).

### The Legal Authorities Violated by the IAM in this Claim 3.

72. Plaintiff asserts that the evidence of the IAM implementing a suspension of trusteeship for FL 1998 is not lawful because the suspension without loss of pay to "*All* Officers and Representatives" did not happen; therefore, the IAM is in violation of the "Statute" such as **§ 7120 Standards of conduct of labor organizations** – i.e. (b) "comply with trusteeship standards"; (a)(1) "to receive fair and equal treatment under the governing rules of the organization."

### 4. CLAIM: The IP appointment with the "temporary Trustee" and "Deputy Trustee" make the compliance for Trusteeship unlawful.

**Argument of violation made by the IAM in this Claim 4.**

**The IP's exercise of determining trusteeship appointments were not proper.**

73. The IP performed an unlawful appointment during this suspension or trusteeship. According to the "governing rules of [this] organization" and "[compliance] with

trusteeship standard", which is the IAM Constitution in <u>Article VI International President</u>: <u>Suspension of Locals</u>…<u>Their Officers and Representatives</u>: SEC 9(a). Proper IP appointments are a requirement for the process of Trusteeship.

74. The IP decided to appoint the "temporary Trustee" to Gerald McCarty, and yet at the same time the IP then designated the same temporary Trustee to also be the "Deputy"/FL 1998 Trustee Deputy", as evidence in **Exhibit C.** The IP action with appointment of "Deputy Trustee/Deputy *Assistants*" does not adhere to the governing rules because the "temporary Trustee" was named on the **Exhibit C**[25] and also named as the "Deputy" to. The Deputy is listed on the bottom of the Memo listed in the cc.. (*stress emphasis plural "Assistants"-such as more than one Deputy Assistant*). The "temporary Trustee" does the appointment of "Deputy Assistants" and the IP does not do the appointments of any more "Deputy Assistants". The rules require more than one Deputy made by the "temporary Trustee", and not made by the IP.

75. The evidence shows that it is not known to the Plaintiff that if the IP has appointed a "temporary Trustee" after Gerald McCarty was designated as the "Deputy/Deputy Trustee", or if the "Deputy Trustee" serves in the same authority and capacity of the "temporary Trustee", or if the IP had decided to appoint additional "Deputy Trustees" or that if the IP had designated "*Deputy Assistants*" as the IAM describes

---

[25] An <u>Unredacted **Exhibit C**</u> may be available and as/if appropriate, showing the name of the "temporary Trustee" and the name of the "Deputy".

within its Constitution. (*stress emphasis plural "Assistants"-such as more than one Deputy Assistant*)

**The Legal Authorities Violated by the IAM in this Claim 4.**

76. Plaintiff asserts that evidence with the decision of the IP to exercise appointments for the position of "temporary Trustee", "Deputy", and not more "Deputy Assistants" is against "reciev[ing] fair and equal treatment under the governing rules of the organization" – IAM Article VI. This evidence supports that the IP implementing a suspension or trusteeship for FL 1998 as not lawful. The Plaintiff raises that the IAM is in violation of the "Statute" such as **§ 7120 Standards of conduct of labor organizations** – i.e. (b) "comply with trusteeship standards"; (a)(1) "to receive fair and equal treatment under the governing rules of the organization."

5. <u>**CLAIM: Plaintiff has the right to financial assistance from the IAM.**</u>

**Rights to have IAM funding for lawsuits in this Claim 5.**

<u>Background prior to Arguments.</u>

77. The IAM has made documents regarding litigation[26]. The IAM has documents named Office Circulars (OC) as described in **paragraph number 8**. The IP made <u>Information/Instructions</u> regarding litigation in an OC[27] as "Due to continuing anti-union and anti-worker biases of many federal, state, and provincial courts...", and

---

[26] No.846, dated January 1, 2025. titled as <u>Control and Coordination of Litigation</u>, issued January 1, 2025, signed by IP and General Secretary-Treasurer of IAM.

[27] Id.

then the OC provides a section <u>Litigation in which the International is a party</u>, and a

another Section <u>Federal court litigation involving issues of union-wide importance</u>

relating to funding litigations.

**Argument of violation made by the IAM in this Claim 5.**

78. Plaintiff argues that the exercise of this filing is not considered as an "anti-union and

anti-worker biases" lawsuit, and the Plaintiff does not consider "many federal, state

and provincial courts" as "continuing anti-union or anti-worker biases" by allowing a

U.S. citizen, such as the Plaintiff, to exercise the right to sue on this matter. The OC

rights the Plaintiff financial support from the IAM to rights for use of the Courts for

this lawsuit. Plaintiff's requests financial support from the IAM, and that this request

by him does not provide any financial burden on any "Local or District". This lawsuit

"on the facts of [this] particular case" waives financial burden on the Local or the

District, since it is the IP actions to suspend or trusteeship. Furthermore, that the

IAM financial assistance to be provided is not a loan, or a debt plan, towards the

Plaintiff.

**The Legal Authorities Violated by the IAM in this Claim 5.**

79. The Plaintiff asserts evidence above shows that when the IAM denied the request for

financial assistance it violated the law of the "Statute" such as **§ 7120 Standards of

conduct of labor organizations** – i.e. (a)(1) "to receive fair and equal treatment

under the governing rules of the organization, and to receive fair process in

disciplinary proceedings."

**6.  CLAIM: Filing additional Claims.**

**Argument of violation in this Claim 6.**

80. The disclosure of additional information can reveal other issues and claims

described that are not asserted, or not proposed, or information was blockaded, in

an initial filing of complaint to the Courts as through discovery. For example,

additional complaints to the Courts might include, but not limited to, Torts i.e.

Personal Injury[28].

**The Legal Authorities violated by the IAM in this Claim 6.**

81. If the raised by the IP, for the IAM to deny the Plaintiff any opportunity to exercise the

right to file complaint to the Courts, since it has an Office Circular regarding <u>Control</u>

<u>and Coordination of Litigation</u>, would be in violation of the "Statute" such as **§ 7120**

**Standards of conduct of labor organizations** – i.e. (a)(1) "to receive fair and equal

treatment under the governing rules of the organization".

**7.  CLAIM: Circumstances – Is there a "playbook" when a Federal Local is subject**

**to the Executive Order 14251 "Exclusions"?**

<u>Background prior to argument below.</u>

82. After 3 months and 28 days from the implementation of the Order 14251

("Exclusions") the IP declared to now implement procedures to suspension or

---

[28] JS 44 (rev. 03/24). <u>Civil Cover Sheet</u>.

trusteeship citing the IAM Constitution Article VI. The **Exhibit B** shows (i.e. a delay in IP notice to Plaintiff with [Direct] Supervision) that the IP "been advised by the (GVP) that the following events have occurred[29]:"; but, the evidence in this **Exhibit B**[30] shows no evidence that the "E.C.[31]" had any awareness of the "[Direct] Supervision[32]". Having an E.C. meeting per Article V on "[Direct] Supervision" is a requirement according to **Article VI**. The Plaintiff did send an email with an attached Letter to the IP regarding the lack of specifics that occurred to the reason for "[Direct] Supervision", and complained no evidence was shown that the "[Direct] Supervision" was properly called by the E.C.; in addition, that FL 1998 was under the Order with "Exclusions". The IP did not reply to Plaintiff's Letter.

83. During the "[Direct] Supervision", the Plaintiff received a FL 1998 "performance improvement plan (PIP)" from the IAM; however, the Plaintiff made issue to the IAM with its conditions [33]. The IP did not reply to the Plaintiff's Letter.

84. During the "[Direct] Supervision", members of IAM called and scheduled membership meetings without the Plaintiff's concurrence as the President of FL 1998. This created internal union complaints to be filed with the IP. As of date with

---

[29] Delay in IP Notice to Plaintiff in [Direct] Supervision from 22nd to 28th of July 2025.
[30] This Exhibit does not show evidence of G.V.P.s listed in the Cc except one, nor does this Exhibit provide evidence that an Article V SEC 1 "meeting shall be called…" on the IP's authority to place the FL 1998 into "Direct Supervision under Article VI".
[31] "E.C. is also known as Executive Council in Article V of the IAM Constitution.
[32] IAM Constitution. Article VI International President: SEC 7, lines 16 and 17.
[33] Letter to IP, , and other DL staff and IAM staff objecting to it, and describing the PIP conditions and procedures were unlawful, titled Objections to Article VI. .,.Objections conditioning discipline &… FL 1998 "PIP".

this filing, these complaints remain under investigation by IAM STC members that were appointed by the IP.

85. During the "[Direct] Supervision", Plaintiff emailed many Letters to the IAM naming the IP to act on, and included the DL, in seeking to preserve rights of the membership in FL 1998 during the "Exclusions". For example, one Letter was emailed to the IAM that recommended support from the IP for making refund[34] arrangements with membership dues back to the members while U.S. Dept of State employees that were in "Exclusions"; however, Plaintiff's Letters were not responded to by the IP.

86. On November 22, 2025, the Plaintiff received an envelope that was not marked with a return address, only with a postal service processing marker from Charleston SC. The envelope contained a photocopy of a Letter, identifying in allegations and listed the Plaintiff as title as "the local president". The Letter indicated that the Plaintiff was "endangering the good and welfare of the membership". The membership of FL 1998 consists of workers within the U.S. Dept of State nationwide, and *maybe non-employees of the U.S. government*. (*stress emphasis*). It is unknown how many of these unmarked envelops from Charleston South Carolina containing these Letters were mailed.

87. The letter notifies the membership about a hearing at a Hotel in North Charleston SC.

---

[34] Letter to the IP, dated August 18, 2025, Subject: "Rights to Membership Refund..."

88. From notice to the Plaintiff on July 28, 2025, with a "[Direct] Supervision", it took a total of 3 months and 22 days, up to November 19, 2025[35] , when the IP decided to make a record, *at least to the membership*[36], declaring a suspension or trusteeship.

**Argument of the "Playbook" by the IAM in this Claim 7.**

89. First, await a few months, or so, after a federal local is placed in "Exclusions" to begin the process of Suspension or Trusteeship of a Federal Local.

90. Second, have a meeting about to claim some general occurrences that *may* have happened after the FL was "Excluded" to the time of when a GVP had a meeting with the IP; but yet, omit if a properly called meeting happened with the "E.C" on the IP exercising authority for "[Direct] Supervision".

91. Third, implement a "Supervision" but not title it as a "Direct Supervision" and provide no mention in the legal official record (Memo) of the involvement of the "E.C.", if any.

92. Forth, create and demand IAM union members, or the FL officers, perform a union "PIP" containing inappropriate, or unlawful, conditions to implement during an "Exclusion" Order.

93. Fifth, wait and see that if a union officer(s), or representative(s), being instructed to implement a "PIP" would resign, or quit, when it told to implement the union "PIP"

---

[35] IAM Membership Letter dated November 19, 2025, mailed via USPS, to member.
[36] No evidence, or mention, from IAM to the membership in the Letter that an LM-15 report was filed to U.S. Dept of Labor for "[Direct] Supervision" as a "subject to other sanction (§ 7120 (b)(1)".

or be subject to "discipline" - all this time while the being subject to the Order of "Exclusions", and while was doing full time Agency work.

94. Sixth, IAM recommend/demand other IAM members, that are not subject to "[Direct] Supervision", to perform the actions within the "PIP".

95. Seventh, have the "PIP" and its conditions cause internal union complaints to be filed to the IP.

96. Eighth, maybe consider to deny informing a "[Direct] Supervision" is made towards a union member as being "is subject to other sanction" to the U.S. Dept of Labor.

97. Ninth, send IAM notices to FL officers that the IP is now implementing suspensions or trusteeship procedures by citing alleging occurrences and violations that happened during the "[Direct] Supervision".

98. Tenth, the Organization creates an event for the members of the FL. This is done by notifying members of the FL with mailing unidentified envelopes from an unspecified exact location, and have those envelopes contain Letters from the IAM informing members to a hearing in a hotel on the occurrences for a suspension or trusteeship.

100. Eleventh, make sure indicate in this Letter to the members naming at least person by title that is alleged to cause the suspension or trusteeship, such as the president by title. List the reason in general[37] allegations of what the named title of

---

[37] The act/intention of misinformation/disinformation to discredit reputation can harm opportunities: for holding future elected positions with public office or public appointments; or harm employer/employee relationships; harm employment opportunities; or harm the ability to hold a security clearance with the U.S. government; among other opportunities that may be limited, because of information concerning certain person(s) in its literature or papers with any misinformation/disinformation that maybe distributed improperly, or distributed for/with ill intentions.

the officer is alleged to have caused - as at least one reason for the hearing. Then, have the Letter include identifying a "Trusteeship Deputy", but not identifying a "temporary Trustee", and not identifying any other "Deputy Assistants".

101. Redirect back to "Step Number 'Third' above" that during the "[Direct] Supervision", deny requests to review information that may be made directing to release only by "in the Court of law", and also deny information to be reviewed when requested after the notice of suspension or trusteeship of the FL, and finally deny requests for IAM financial assistance to exercise rights to sue the IP "in the Court of law".

102. Redirect back to "Step Number 'Seventh' "above, that if any complaints may be filed by an officer, or representative, of the FL during the "[Direct] Supervision", treat those complaints differently than those filed by other members of the local during the "[Direct] Supervision".

103. Twelve, plan to take a week or so, as to prepare to conduct a union hearing to raise allegations of what happened during the "[Direct] Supervision" to charge a union officer(s), or representative(s) for misconduct.

104. Thirteen, make plans to secure the over 400K of membership money - after the IP places the FL 1998 into its suspension or trusteeship after a hearing.

105. Fourteen, make no mention information available for an opportunity for a refund to the membership, and conceal information to the how the Plaintiff had requested arrangements to a membership refund with dues money when the Plaintiff had

sent an email to the IAM that had a letter that the IP act on, but the IP did not reply to the Plaintiff.

106. Finally, in the event of any hint of a lawsuit by a Plaintiff regarding trusteeship, do not fund any lawsuit by a member(s) filing to the Courts complaining of actions made by the IP, or to deny any funding to a Plaintiff for the opportunity to petition the Courts for an Order that a better arrangement, or remedy, if a non-IAM party were to maintain the financial rights of the Local's resources.

107. Plaintiff argues, with its evidence in this filing, that this is real.

108. Plaintiff argues, with its evidence in this filing, that something is not right with what the IP is doing.

### The Legal Authorities Violated by the IAM in this Claim.

109. With this Claim, the Plaintiff raises allegations that the evidence shows that the IP is as the organization "in fact *subject to influences* that would preclude recognition under this chapter"; therefore, the IP is in violation of the "Statute" such as **§ 7120 Standards of conduct of labor organizations** – i.e. (b)(2) "the organization is in fact *subject to influences* that would preclude recognition under this chapter ".

110. And violation of **§ 7135. Continuation of existing laws, recognitions, agreements, and procedures**: (d) "Executive Order, ... shall remain in full force and effect until..." since the evidence shows that the IP places conditions on the

Plaintiff that is currently ordered to comply with an "Exclusions" that has been issued by the president in accordance with this "sub-statute" of this "Statute".

## F.  REMEDIES FOR THIS COMPLAINT.

111. The Orders that the IAM provides Plaintiff with the review of my original information in July 2025.

112. The IAM provides Plaintiff with review of any/all requested information after July 2025, to include review of any/all requests made by me pertaining to the evidence used for deciding the Direct Supervision, requests for information with IAM meetings, requests to the DL,  and requests information about for Trusteeship and comparators with other IAM locals or DLs that were placed into Trusteeships, to include any requests for information and evidence from the internal complaints that were mentioned in this filing.

113. The court provides Plaintiff with Statutory rights to discover for preparing to pretrial.

114. The Court implement and injunction, and/or restraining order, and this would include on the scheduled hearing on December 9, 2025, at 9am.  This would include a written Memo mailed to members by the IAM of the injunction, or a restraining order, and the citation of the case number of the injunction/restraining order.

115. The Court Orders the IAM to reimburse Plaintiff's associated Court filing fees/costs and any other costs accrued to support Court filings, and Orders the IAM to provide funds directly from the IAM that is not a loan, or not a debt, to the Plaintiff if he becomes represented by an attorney(ies).

116. Any other remedy(ies) as requested by Plaintiff as new information becomes available.

117. Any other remedy(ies) that the Court deems appropriate.

### *Special consideration for remedy, in lieu of IAM's Trusteeship:*

118. The Court maintain jurisdiction over the FL 1998, perhaps if such as until Executive Order 14251 is withdrawn/rescinded, or EO 14251 is revised by President Trump[38]. If the exclusions from 5 U.S.C. 71 causes the FL1998 to be decertified, then respectfully request a consideration for a Court hearing to decide if the Court may consider arrangements and procedures to refund a fair share of money back to the membership.

119. If the Court maintains jurisdiction, and during that time, if Schedule Policy/Career is implemented at the U.S. Dept of State that impacts this former bargaining unit and the former employees that were/are members, then then respectfully request a consideration for a Court hearing to decide if the Court may consider arrangements and procedures to refund a fair share of money back to the membership.

120. Any other conditions, in lieu of the IAM Trusteeship, at the discretion of the Court.

---

[38] § 7135 subsection (b). Continuation of existing laws, recognitions, agreements, and procedures.

## G.  SIGNATURE PAGE

**Thank You and Respectfully Submitted, signed and dated.**

12/1/2025,

*pro se.*

**Boyd Hinton,** *Pro Se*

**Mailing Address:**

Boyd Hinton

P.O. Box 60503

North Charleston, SC 29419

**Phone Number:**

(854) 253 6862

**Email address:**

Bpod396insc@gmail.com

## H. <u>INDEX OF THE ENCLOSURES: EXHIBITS</u>[39]

**Exhibit A** (with redactions) – Email from U.S. Dept of State regarding "Exclusions".

**Exhibit B** (with redactions) – Supervision Memo to FL 1998 Officers.

**Exhibit C** (with Redactions) – Trusteeship Memo to FL 1998 Officers.

**Exhibit D 1** (with redactions) – Mailed envelope to Plaintiff with no identifier with return address of the sender.

**Exhibit D 2** – photocopied Letter to Member of FL 1998 from IAM signed by Gerald McCarty FL 1998 Trustee Deputy regarding Trusteeship that was enclosed in Exhibit D 1.

**Exhibit E** (with redactions)– Letter to the IAM IP to provide fees to file US DCSC complaint.

---

[39] All redactions made in these Exhibits of the original documents used in this filing were performed by the Plaintiff.

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name _Boyd HINTON_
Street Address _P.O. Box 60503_
City and County _North Charleston, Charleston_
State and Zip Code _SC, 29419_
Telephone Number _(854) 253 6862_

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name _Brian Bryant_
Job or Title _International President of IAM_
(if known)
Street Address _9000 Machinists Place_
City and County _Upper Marlboro, Prince George_
State and Zip Code _MD, 20772 - 2687_
Telephone Number _(301) 967 - 4500_

Defendant No. 2

Name _____
Job or Title _____
(if known)
Street Address _____
City and County _____
State and Zip Code _____
Telephone Number _____

Defendant No. 3

Name _____

2

| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |

Defendant No. 4

| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

    ☒ Federal question        ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____5 U.S.C. 71_____

_____

_____

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of
the State of *(name)* _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated
under the laws of the State of *(name)* _____,
and has its principal place of business in the State of *(name)*
_____.

*(If more than one plaintiff is named in the complaint, attach an additional
page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of
the State of *(name)* _____. *Or* is a citizen of
*(foreign nation)* _____.

b.    If the defendant is a corporation

The defendant, *(name)* _____, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____. *Or* is
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

4

3.      The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

_____

_____

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

___*See attached complaint*_____

_____

_____

_____

_____

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

___*See attached complaint*_____

_____

_____

_____

_____

V.     **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.     **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _12/1/_, 20_25_.

Signature of Plaintiff      _____

Printed Name of Plaintiff   _Boyd Hinton_____

B.     **For Attorneys**

Date of signing: _____, 20__.

Signature of Attorney       _____
Printed Name of Attorney    _____
Bar Number                  _____
Name of Law Firm            _____
Address                     _____
Telephone Number            _____
E-mail Address              _____