**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| BOYD HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:25-cv-13663-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| BRIAN BRYANT, | ) | |
| INTERNATIONAL ASSOCIATION | ) | |
| OF MACHINIST AND AEROSPACE | ) | |
| WORKERS, and JOHN DOES 1–10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on plaintiff Boyd Hinton's ("Hinton")

motion for a preliminary injunction, ECF No. 10. For the reasons set forth below, the

court denies Hinton's motion for a preliminary injunction.

## I.  BACKGROUND

This action arises from a dispute concerning labor unions. ECF No. 33, Amend.

Compl. Hinton is a member and former president of the National Federation of Federal

Employees Local 1998 ("Local 1998") in Charleston, South Carolina. Id. ¶¶ 6, 13. Local

1998 is a subordinate, affiliate body of defendant International Association of Machinist

and Aerospace Workers ("IAM"). See id. ¶¶ 6–7. Local 1998's bargaining unit

exclusively represents federal employees of the United States Department of State in the

Passport Services division. ECF No. 44 at 13. Defendant Brian Bryant ("Bryant") is the

international president of the IAM. Amend. Compl. ¶ 8. Defendant John Does 1–10

(together with IAM and Bryant, "Defendants") are various unnamed officers, agents, or

representatives of IAM. Id. ¶ 9.

1

Hinton alleges that, from July to December 2025, IAM held Local 1998 in an unlawful trusteeship.  See id. ¶¶ 15–26.  On or about July 22, 2025, IAM placed Local 1998 under "direct supervision."  Id. ¶ 15.  Hinton was unaware of any charges, disciplinary action, or hearings concerning his personal conduct or the operation Local 1998 prior to IAM's actions.  Id. ¶¶ 14, 17.  On or about December 1, 2025, Hinton received notice from IAM of a meeting concerning placing Local 1998 under trusteeship.  Id. ¶ 19.  According to Hinton, the notice did not contain written charges, procedures, or information as to which provisions of the IAM constitution the trusteeship was to be imposed.  Id. ¶¶ 20–21.  On December 9, 2025, Defendants conducted a trusteeship proceeding at which Hinton was present.  Id. ¶¶ 22–24.

On December 10, 2025, IAM filed a Form LM-15[1] stating that the executive council had decided to place Local 1998 under trusteeship.  Id. ¶ 27.  On December 13, 2025, IAM issued charges against Hinton from its special trial committee.  Id. ¶ 29.  IAM initiated an investigation into the conduct of Hinton and Local 1998 on December 22, 2025.  Id. ¶ 31.  Citing alleged deficiencies in the notice and hearing procedures for IAM's imposition of the trusteeship and subsequent investigation, Hinton claimed that Defendants violated federal law and the IAM constitution.  Id. ¶¶ 1, 33–34 .

Hinton originally filed this action pro se on December 9, 2025, ECF No. 1, and entered an amended complaint on January 5, 2026, ECF No. 33, Amend. Compl.  He asserts four claims: (1) breach of contract; (2) violation of Title III of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 462, which

---

[1] A Form LM-15 is a form that a labor union must file with the United States Department of Labor when it puts a subordinate organization under a trusteeship.

2

governs trusteeships; (3) violation of Section 101(a)(5), Title I of the LMRDA, 29 U.S.C. § 411(a)(5), which provides certain due process protections when a union takes disciplinary action against a member that affects their membership rights; and (4) declaratory relief concerning the validity of the trusteeship and disciplinary proceedings. Id. ¶¶ 35–46.

Hinton filed a motion for a temporary restraining order ("TRO") and preliminary injunction on December 9, 2025. ECF No. 10. The court entered a TRO on December 9, 2025, ECF No. 15, and dissolved the TRO on December 12, 2025, ECF No. 25. Defendants responded in opposition on January 16, 2026. ECF No. 34. Hinton filed an untimely reply on March 16, 2026. ECF No. 40. The court held a hearing on Hinton's motion for a preliminary injunction on March 23, 2026. ECF N0. 42. As such, the motion is fully briefed and now ripe for the court's review.

## II.   STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. See Fed. R. Civ. P. 65. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." United States v. South Carolina, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)), modified in part, 906 F. Supp. 2d 463 (D.S.C. 2012), aff'd, 720 F.3d 518 (4th Cir. 2013). The party seeking a preliminary injunction must make a "clear showing" that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008). To succeed, the movant must

3

satisfy all four of the <u>Winter</u> factors. <u>Real Truth About Obama, Inc. v. Fed. Election Comm'n</u>, 575 F.3d 342, 346–47 (4th Cir. 2009), <u>vacated and remanded</u>, 559 U.S. 1089 (2010), <u>reissued in relevant part by per curiam published order</u>, 607 F.3d 355 (4th Cir. 2010). "A preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter</u>, 555 U.S. at 24.

### III.  DISCUSSION

#### A. Mandatory Preliminary Injunction

Before turning to the merits of Hinton's motion, the court must determine whether the injunctive relief he seeks is mandatory or prohibitory. <u>See</u> <u>League of Women Voters of N.C. v. North Carolina</u>, 769 F.3d 224, 235 (4th Cir. 2014). Courts determine which of these categories an injunction falls in by looking to whether the injunction would alter or preserve the status quo. <u>See</u> <u>S.C. Progressive Network Educ. Fund v. Andino</u>, 493 F.Supp.3d 460, 466 (D.S.C. 2020). For these purposes, the status quo is "the last uncontested status between the parties which preceded the controversy." <u>Id.</u> (quoting <u>League of Women Voters of N.C.</u>, 769 F.3d at 236). While "mandatory [temporary restraining orders and preliminary] injunctions alter the status quo [generally by requiring the non-movant to do something], prohibitory [ones] aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." <u>Id.</u> (alterations in original) (quoting <u>League of Women Voters of N.C.</u>, 769 F.3d at 235–36). Even when the court requires a party to undertake an affirmative obligation to restore the status quo, the injunction is prohibitory. <u>League of Women Voters of N.C.</u>, 769 F.3d at 236.

Defendants placed Local 1998 under temporary trusteeship and removed Hinton from his position as president of Local 1988 on November 19, 2025. ECF No. 34 at 24.

Hinton's motion, filed on December 9, 2025, asks the court to "enjoin Defendants from imposing a trusteeship, removing elected officers, seizing control of Local 1998." ECF No. 10 at 1. Consequently, the relevant status quo prior to this action is that Local 1998 is under the trusteeship of IAM and Hinton does not hold the office of president of Local 1998. See ECF No. 24–25. Because Hinton seeks an injunction that would alter the status quo, the court finds that Hinton seeks a mandatory preliminary injunction. See S.C. Progressive Network Educ. Fund, 493 F. Supp. 3d at 466.

### B. Likelihood of Success on the Merits[2]

#### 1. Breach of Contract Under Section 301 of LMRA

Hinton asserts a claim for breach of contract against Defendants. Amend. Compl. ¶¶ 35–38. He alleges that Defendants violated the IAM constitution by placing Local 1998 under trusteeship and removing him from office without providing "written charges, notice, and a fair hearing." Id. ¶¶ 36–37.

At the outset, there are substantial deficiencies in both Hinton's amended complaint and motion for a preliminary injunction which evince that he has not made a

---

[2] Defendants argue that even if Section 301 of the LMRA or Title III of the LMRDA applies to Local 1998, the trusteeship and removal of Hinton from office complied with IAM constitution. ECF No. 34 at 17–25. At the outset, under to Title III of the LMRDA, a trusteeship is presumed valid for a period of 18 months from the date of its establishment, see 29 U.S.C. § 464(c), so long as it is "imposed in procedural conformity with the union's constitution and authorized or ratified after a fair hearing," Becker v. Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO, 900 F.2d 761, 771 (4th Cir. 1990). Defendants state that the direct supervision and trusteeship were imposed after full hearing procedures pursuant to Article VI Section 8 of the IAM constitution because the "good and welfare" of Local 1998 was "placed in jeopardy" by Hinton's violations of the IAM constitution. ECF No. 34 at 17. Specifically, IAM charged Hinton with insubordination and refusal to perform duties, citing Hinton's cancelation of membership meetings and elections, refusal to perform financial reporting, and repeated claims that Local 1998 is not bound by the IAM constitution. See ECF No. 34-22.

"clear showing" of a likelihood of success on his breach of contract claim.  See Di Biase

v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (stating that a plaintiff seeking a

preliminary injunction "need not establish a 'certainty of success,'" but they must "make

a clear showing that [they are] likely to succeed at trial.").  At no point does Hinton

specify which provisions of the IAM constitution that Defendants have allegedly

breached, nor does he cite to case law or the federal statute that governs his claim.  See

Amend. Compl.  ¶¶ 35–38; ECF No. 10 at 3–4; see also Glob. State Inv. USA, Inc. v.

LAS Props., LLC, 2015 WL 1943370, at *10 (D.S.C. Apr. 29, 2015) (dismissing a breach

of contract claim under Rule 12(b)(6) where a plaintiff failed to identify in his complaint

the specific contractual provision allegedly breached, thus precluding the court from

drawing "a reasonable inference that a [defendant] is liable for a breach of contract").

Hinton's breach of contract claim is governed by the Labor Management

Relations Act ("LMRA").  ECF No. 10 at 3.  Section 301 of the LMRA provides that

federal district courts have jurisdiction over "[s]uits for violation of contracts between an

employer and a labor organization representing employees in an industry affecting

commerce as defined in this Act, or between any such labor organizations."  29 U.S.C. §

185(a) ("Section 301"); see Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71, 502 U.S.

93, 101 (1991) ("Congress expressly provided in § 301(a) for federal jurisdiction over

contracts between an employer and a labor organization or between labor

organizations.").  A union constitution is a "contract" for purposes of Section 301.

United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Indus. v. Local

334, 452 U.S. 615, 619 (1981).  For a Section 301 breach of contract claim premised on a

union constitution, "both unions involved must qualify as 'labor organizations.'"  United

Elec., Radio & Mach. Workers of Am. v. W. Va. Pub. Workers Loc. 170, 2025 WL 970412, at *2 (S.D.W. Va. Mar. 31, 2025) (dismissing a breach of contract claim under Section 301 of the LMRA for lack of subject matter jurisdiction because the defendant union was not a "labor organization" as defined by the statute).

The LMRA states that the terms "employer" and "labor organization" shall have the same meaning as when used in the National Labor Relations Act ("NLRA"). See 29 U.S.C. § 142(3). An "employer" is "any person acting as an agent of an employer, directly or indirectly, but shall not include the United States . . . or any State or political subdivision thereof." 29 U.S.C. § 152(2) (emphasis added). A "labor organization" is defined as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." Id. § 152(5) (emphasis added).

There is not a likelihood of success for Hinton's breach of contract claim because it is not within the court's subject matter judication under Section 301 of the LMRA. See 29 U.S.C. § 185(a); see also Frazier v. Prince George's Cnty., 140 F.4th 556, 562 n.2 (4th Cir. 2025) (stating that courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006)). Local 1998 exclusively represents federal employees of the United States Department of State in the Passport Services division. ECF No. 44 at 13. Thus, Local 1998 falls outside the LMRA's definition of "labor organization" because it does not deal with a qualifying employer.

See 29 U.S.C. § 152(2) ("[t]he term 'employer' . . . shall not include . . . the United States").

Because this action does not concern a dispute "between labor organizations," the court lacks subject matter jurisdiction over Hinton's breach of contract claim under Section 301 of LMRA and finds that Hinton has not demonstrated a likelihood of success on the merits. See Wooddell, 502 at 101; United Elec., Radio & Mach. Workers, 2025 WL 970412, at *2.

### 2. Claims Under LMRDA

The LMRDA "was Congress's first major attempt to regulate the internal affairs of labor unions." Local No. 82, Furniture & Piano Moving v. Crowley, 467 U.S. 526, 528 (1984); see 29 U.S.C. § 401(c) (stating congressional purpose of enacting LMRDA was, in part, to "eliminate or prevent improper practices on the part of labor organizations"). It is a "complex statutory scheme" consisting of seven titles, see Crowley, 467 U.S. at 529, and two of them—Title I and Title III—are at issue in this action, Amend. Compl. ¶¶ 39–44.

### a. Title I Discipline

Title I of the LMRDA, codified at 29 U.S.C. §§ 411–15, provides a "Bill of Rights" for union members, which is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." Crowley, 467 U.S. at 536–37; see 29 U.S.C. § 411. Section 101(a)(5) of Title I states that:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A)

served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) ("Section 101(a)(5)").  Hinton's claim that he was "disciplined and deprived of rights without written specific charges, reasonable time to prepare a defense, or a full and fair hearing" is governed by Title I of the LMRDA.  See Amend. Compl. ¶¶ 42–44.

Hinton cannot show a likelihood of success for his Title I discipline claim because Section 101(a)(5) of the LMRDA does not apply to his removal as president of Local 1998.  See 29 U.S.C. § 411(a)(5).  The procedural protections of Section 101(a)(5) apply only to disciplinary actions that affect "membership rights," see Finnegan v. Leu, 456 U.S. 431, 438 (1982) , such as the right to nominate candidates for office, vote in union elections, attend membership meetings, and express views and opinions on union business, see 29 U.S.C. §§ 411(a)(1), (2).  Courts have held that "[i]t is well-settled that Section 101(a)(5) only protects union members against a loss of membership rights due to being unfairly disciplined by a union."  Green v. Brigham, 2005 WL 280327, at *4 (E.D.N.Y. Feb. 3, 2005).  However, the provision "does not protect union members in their official capacities (as elected or appointed officials) from losing rights related to their official position."  Id.; see also Cotter v. Owens, 753 F.2d 223, 226 (2d Cir. 1985) ("The LMRDA protects union members as members, not in their roles as union officers or employees").  Hinton makes no substantive allegation of harm to his membership rights within Local 1998; rather he alleges in a conclusory manner that he was deprived of "authority and autonomy" when removed from elected office.  See Amend. Compl. ¶ 18; ECF No. 10 at 1–5.  Moreover, the court must presume that Hinton's removal was lawful at this stage because the IAM constitution requires automatic suspension of all

9

elected officers once a trusteeship is imposed. See Becker, 900 F.2d at 771; ECF No. 34 at 13–14, 23 ("Under Article VI, Section 9(a), '[a]ll officers and representatives shall be suspended' when the International President imposes a trusteeship.").

Because Section 101(a)(5) of the LMRDA does not apply to Hinton's removal as president of Local 1998, the court finds that Hinton has not demonstrated a likelihood of success on the merits of his Title I discipline claim. See Finnegan, 456 U.S. at 438.

### b. Title III Trusteeship

Title III of the LMRDA, codified at 29 U.S.C. §§ 461–66, governs trusteeships. Congress intended for Title III of the LMRDA "to address problems related to imposition of trusteeships over local unions." Hunter v. Serv. Emps. Int'l Union, 2019 WL 1294697, at *6 (N.D. Ill. Mar. 21, 2019) (quoting Morris v. Hoffa, 361 F.3d 177, 186 (3d Cir. 2004)). Hinton's claim that the "trusteeship imposed upon Local 1998 was not established in conformity with the IAM Constitution" is governed by Title III of the LMRDA. See Amend. Compl. ¶¶ 39–41.

Under Title III, a "labor organization" shall establish a trusteeship "over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship." 29 U.S.C. § 462. Permissible purposes for establishing a trusteeship are limited to "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." Id.

In the absence of a statutory definition of "subordinate body", the Fourth Circuit and other circuit courts have held that "language, structure, and legislative history" of the

10

LMRDA require that the term mean "subordinate labor organization." See, e.g., Kanawha Valley Lab. Council, AFL-CIO v. Am. Fed'n of Lab. & Cong. of Indus. Orgs., 667 F.2d 436, 438 (4th Cir. 1981); Reed v. Sturdivant, 176 F.3d 1051, 1052 (8th Cir. 1999) (affirming that "Title III does not apply to trusteeships imposed upon local unions that represent only federal government employees"); Smith v. Office & Prof'l Emps., 821 F.2d 355, 356 (6th Cir. 1987) (analyzing the LMRDA's structure and legislative history to find that Congress "clearly used the term 'subordinate body' interchangeably with the terms 'labor organization' and 'subordinate labor organization'" in Title III); N.J. Cnty. & Mun. Council No. 61 v. AFSCME, 478 F.2d 1156, 1160 (3d Cir. 1973) ("The only conclusion which we can reasonably reach is that public employee unions are not covered by the phrase 'subordinate body.'"). The LMRDA defines "labor organization" as a body which "exists for the purpose, in whole or in part, of dealing with employers." 29 U.S.C. § 402(i). However, "employer[s]" does not include "the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof." Id. § 402(e).

Local 1998 exclusively represents federal employees of the United States Department of State in the Passport Services division. ECF No. 44 at 13. Thus, Local 1998 falls outside of the definition of "subordinate body" under Title III because the United States is not considered an "employer". See 29 U.S.C. §§ 402(e), (i); see also Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996) ("A labor organization composed entirely of public sector employees is not a labor organization for purposes of the LMRDA.").

Because Local 1998 is not a "subordinate body" under the LMRDA, Hinton has not demonstrated a likelihood of success on the merits of his Title III trusteeship claim. See Kanawha Valley, 667 F.2d at 438.

Hinton has failed to make the required "clear showing" of a likelihood of success on the merits for his claim under Section 301 of LMRA for breach of contract and LMRDA claims concerning Title I discipline and Title III trusteeship. As such, the court denies Hinton's motion for a mandatory preliminary injunction.[3]

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** Hinton's motion for a preliminary injunction.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 20, 2026**
**Charleston, South Carolina**

---

[3] Because Hinton failed to make a "clear showing" of a likelihood of success on the merits, the court need not consider the remaining Winter factors. See Real Truth, 575 F.3d at 346–47; Winter, 555 U.S. at 22; see also Starbucks Corp. v. McKinney, 602 U.S. 339, 346 (2024).

12